UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH ANTHONY GEORGE,<br>  Plaintiff,<br>v.<br>RALPH DIAZ, et al.,<br>  Defendants. | Case No. 20-cv-03244-SI<br><br>**ORDER DENYING TRO, DENYING REQUEST FOR COUNSEL, AND DISMISSING COMPLAINT WITH LEAVE TO AMEND**<br><br>Re: Dkt. Nos. 1, 2, 4 |

Joseph Anthony George, a prisoner at the Pelican Bay State Prison, filed this *pro se* civil rights action under 42 U.S.C. § 1983. The complaint is now before the court for review pursuant to 28 U.S.C. § 1915A. Plaintiff's requests for a temporary restraining order and for appointment of counsel also are before the court for review.

**BACKGROUND**

A. Allegations of Complaint

The complaint concerns prison officials' efforts to keep prisoners safe in the era of Covid-19, a disease caused by the novel coronavirus (also known as SARS-CoV-2). Plaintiff sues the Secretary of the California Department of Corrections and Rehabilitation (CDCR), the Chief Medical Executive of the CDCR, the Warden at Pelican Bay, and the Chief Medical Executive at Pelican Bay. He alleges that his constitutional rights have been violated because defendants "have no plan [for] prevention, treatment, medical staff or equipment" for Covid-19. Docket No. 1 at 4.

Plaintiff alleges that the coronavirus has caused a global pandemic and will spread rapidly if it gets into the prison population. *Id.* at 3. He therefore believes that it is imperative that the CDCR stay vigilant and prepare for it. *Id.*

1       Plaintiff further alleges that the CDCR has no tests, continues to transfer inmates, and allows
2   staff members to return from vacation without being required to provide a negative test for the
3   coronavirus. "There is no hospital at [Pelican Bay] and no plan to treat inmates if an outbreak
4   occurs. Because this is a rural area with only 3 cases of the coronavirus, they are very lax." *Id.* at
5   2. Nonetheless, plaintiff does not want to be transferred to another prison; because there are very
6   few cases of Covid-19 in the rural area in which Pelican Bay is located, transferring him "to a
7   different prison with no vaccine or medication, equipment and medical training [will put] plaintiff
8   at a greater and [imminent] danger of getting infected and dying." *Id.* at 4.

9       Plaintiff alleges that he has heart disease and lung damage and, therefore, will die if infected
10  with the coronavirus. *Id.* at 2. (According to the CDCR's inmate locator website, plaintiff is 52
11  years old, has been in custody since 2018, and has a parole eligibility date in 2027.
12  https://inmatelocator.cdcr.ca.gov.)

13      Plaintiff is now at Pelican Bay serving a term in the security housing unit (SHU) that expires
14  on August 15, 2020. *Id.* at 4. Plaintiff allegedly passed through four other prisons en route to
15  Pelican Bay in March. During the period from March 16 through 19, he allegedly went from
16  Donovan to Chino to North Kern to Tracy to Pelican Bay. *Id.* at 3. He alleges that, during transit,
17  no one was wearing a mask or taking temperatures. He further alleges that, once he arrived at
18  Pelican Bay, he was placed on a two-week quarantine during which his temperature was checked,
19  although checked by medical staff who were not wearing masks 99% of the time. *Id.* He does not
20  allege that he has contracted Covid-19 – and his complaint is dated more than six weeks after he
21  arrived at Pelican Bay.

22      Plaintiff alleges that he filed a regular inmate appeal and an emergency inmate appeal
23  requesting that prison officials take certain steps (e.g., stop any transfer until the inmate tests
24  negative, require that masks be worn by inmates and staff, and prevent his transfer to any other
25  prison). *Id.* at 4.

26
27
28

B. <u>Motion For Temporary Restraining Order and Preliminary Injunction</u>

Plaintiff has filed a motion for a temporary restraining order (TRO) and preliminary injunction seeking an order (1) requiring defendants "to create a comprehensive practice to treat coronavirus infected inmates and staff that includes test kits, requiring staff to test negative before returning from vacation, train staff and purchase ventilators, dialysis machines, other equipment and supplies for an emergency treatment area"; and (2) preventing plaintiff's transfer to another prison until there is a vaccine for Covid-19.  Docket No. 2 at 3.

In his three-page motion for a TRO, plaintiff declares that defendants do not have a plan to prevent or treat inmates or staff in the event of an outbreak of Covid-19, and that he is at a heightened risk of death due to heart disease and lung damage.  Other than his statements in the 3-page motion signed under penalty of perjury, plaintiff submits no evidence in support of his motion.  He also does not show that he has any expertise in medicine or epidemiology.  Rather, his motion (like his complaint) appears to be based on information he has gathered from the news, other inmates, and perhaps prison staff about the coronavirus and Covid-19.

C. <u>Judicially Noticed Facts</u>

A court may take judicial notice of facts that are not subject to reasonable dispute because they are generally known or are capable of accurate and ready determination.  Fed. R. Evid. 201(b).  The court may take judicial notice of matters of public record, such as the existence and authenticity of a document, but cannot take judicial notice of the truth of its contents.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 689–90 (9th Cir. 2001); *see, e.g., id.* (court could judicially notice existence of waiver of extradition and that it was signed by plaintiff, but could not judicially notice that it was a valid waiver when no court had approved it).  The court can take judicial notice of "public records and government documents available from reliable sources on the Internet, such as websites run by governmental agencies." *Gerritsen v. Warner Bros. Entm't Inc.*, 112 F.Supp.3d 1011, 1033 (C.D. Cal. 2015) (internal quotations omitted).

The court takes judicial notice of two facts that illustrate that the governmental response to the Covid-19 pandemic has evolved in the few short months the pandemic has been in the United

3

States. First, the Centers for Disease Control first recommended the use of cloth face coverings in public settings on April 3, 2020. https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/cloth-face-cover.html. Second, the California statewide stay-at-home order was not issued until March 19, 2020. California Governor Newsom issued Executive Order N-33-20 on March 19, 2020, directing California residents to heed the Order of the State Public Health Officer dated March 19, 2020, which ordered individuals living in California "to stay home or at their place of residence" with certain exceptions. https://www.gov.ca.gov/wp-content/uploads/2020/03/3.19.20-attested-EO-N-33-20-COVID-19-HEALTH-ORDER.pdf.

The court also takes judicial notice of materials on the CDCR's website that reflect that the CDCR has prepared plans to address the spread of Covid-19 in the California prison system. There is an entire section of the CDCR's website devoted to the Covid-19 situation and response efforts. https://www.cdcr.ca.gov/covid19/covid-19-response-efforts/#CFC. There also is a CDCR document providing interim guidance for health care providers in the California prison system. https://cchcs.ca.gov/covid-19-interim-guidance/. There also is information posted on the CDCR's website describing restrictions on inmate transfers and inmate intake as part of the Covid-19 response. https://www.cdcr.ca.gov/covid19/covid-19-response-efforts/#TRRP. Importantly, the court does not take judicial notice that the plans discussed on the CDCR's website have been implemented or will be effective. Rather, the court only takes judicial notice that the CDCR has developed plans to address the Covid-19 problem in California prisons.

## DISCUSSION

A. Review of Complaint

A federal court must engage in a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). The court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id.* at § 1915A(b)(1),(2). *Pro se* complaints must be liberally construed. *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

Although a complaint "does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). A complaint must proffer "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

Deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004). To establish an Eighth Amendment claim on a condition of confinement, such as medical care, a prisoner-plaintiff must show: (1) an objectively, sufficiently serious, deprivation, and (2) the official was, subjectively, deliberately indifferent to the inmate's health or safety. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A defendant is deliberately indifferent if he knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer*, 511 U.S. at 837. The defendant must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but he "must also draw the inference." *Id.*

Plaintiff's complaint fails to state a plausible claim for an Eighth Amendment violation. His complaint falters on the deliberate indifference prong of an Eighth Amendment claim. Plaintiff's allegations that prison officials have no plans for prevention, treatment, medical staff, or equipment to address Covid-19 in the prisons are not plausible, given the ample evidence (of which this court has taken judicial notice) that the CDCR has prepared plans to address Covid-19 in the prison population. The CDCR's website shows that the CDCR has plans regarding, for example, inmate movement, inmate health care, inmate release, as well as hygiene and sanitation in the prisons. His allegations that he was transported to several prisons in mid-March by persons who were not

5

1    wearing face masks or taking his temperature do not suggest deliberate indifference by the
2    defendants in this action given that (a) the Centers for Disease Control did not recommend cloth
3    face coverings in public settings until about two weeks after he was transported, (b) travel in
4    California was not then restricted even for the unincarcerated population, and (c) he did not become
5    sick as a result of being transported in the conditions he alleges.

6    Leave to amend is granted so that plaintiff may file an amended complaint to attempt to
7    plead a claim that is plausible on its face. Plaintiff is cautioned that he must allege facts that
8    plausibly suggest that each defendant has been deliberately indifferent to a serious medical need.
9    Plaintiff also is cautioned that he should confine his allegations to his own individual situation, as
10   he cannot complain about violations of the rights of other prisoners. *See Russell v. United States*,
11   308 F.2d 78, 79 (9th Cir. 1962) (" litigant appearing in propria persona has no authority to represent
12   anyone other than himself"); *see also Griffin v. Smith*, 493 F. Supp. 129, 131 (W.D.N.Y. 1980)
13   (denying class certification on basis that *pro se* prisoner cannot adequately represent class).

B.   Motion For TRO

A temporary restraining order preserves the status quo and prevents irreparable harm until a hearing can be held on a preliminary injunction application. *See Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974). A temporary restraining order is an "extraordinary remedy" that the court should award only when a plaintiff makes a clear showing that he is entitled to such relief. *See Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 24 (2008). The standards for a temporary restraining order are the same as those for a preliminary injunction. *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). A plaintiff must demonstrate (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm that will result if an injunction is not issued, (3) the balance of equities tips in favor of the plaintiff, and (4) an injunction is in the public interest. *See Winter*, 555 U.S. at 20.[1] The irreparable injury must be both likely and immediate. *See id*. at 22;

---

[1] *Winter* did not, however, completely reject the validity of the sliding scale approach to preliminary injunctions. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134 (9th Cir.

1   *Caribbean Marine Services Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) ("A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief.")

Plaintiff is not entitled to a TRO or preliminary injunction to require CDCR officials to implement certain steps to address Covid-19 or to require CDCR officials to refrain from transferring plaintiff. First, there does not appear to be a likelihood of success on the merits at this time. As explained in the preceding section, plaintiff has not yet stated a claim for relief.

Second, plaintiff does not show irreparable injury that is both likely and imminent. The evidentiary support for the requested TRO to compel CDCR officials to develop a plan – which consists only of plaintiff's verified three-page motion -- falls far short of showing that irreparable harm is likely and imminent if interim relief is not granted. As explained above, plaintiff's suggestion that the CDCR has *no* plan to address Covid-19 in the prison is not plausible, given the ample evidence on the CDCR's website showing that the CDCR *does* have a plan. This is not to say that having some plan eliminates any concern about an inmate's health and safety, as a plan that exists might not be put into practice or it might not be a plan that effectively addresses the problem. But plaintiff is not taking issue with the plan that is in place – he contends there is no plan. Plaintiff offers no competent evidence that the steps taken by CDCR to date and the plan the CDCR has described on the website, amount to deliberate indifference to his serious medical needs. Moreover, plaintiff alleges that he is housed in a prison in a rural area in which there are only three cases of Covid-19; this also undermines the imminence of the threat to him.

Plaintiff also fails to show irreparable injury that is both likely and imminent with regard to his request for a TRO prohibiting his transfer until a vaccine is developed. There is no evidence that prison officials are contemplating transferring him to another prison in the near future. He alleges that he is at Pelican Bay serving a SHU term that will expire in mid-August, three months

---

2011). Under the "sliding scale" approach used in the Ninth Circuit – also dubbed the "serious question" test in *Alliance for Wild Rockies* -- "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Id.* at 1131. Thus, even after *Winter*, "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Id.* at 1132 (citations omitted).

from now. In three months, the Covid-19 situation likely will be quite different from today: Pelican Bay may be devoid of Covid-19 cases or it may be overrun with them. Plaintiff does not show that he will suffer irreparable harm if the interim relief is not granted.

Finally, even if the foregoing problems did not exist, plaintiff does not show the need for a TRO without any notice to the defendants, who have not yet been served with process in this action. Federal Rule of Civil Procedure 65(b)(1) provides that a TRO can issue without notice to adverse party only if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" and the movant certifies in writing the efforts to give notice and the reasons why notice should not be required. These stringent requirements "reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." *Granny Goose*, 415 U.S. at 423. Plaintiff does not show that immediate and irreparable injury will occur if the court does not act before allowing defendants to be heard, nor does he provide any information about his efforts to give notice to defendants. His failure to satisfy Rule 65(b)(1) is fatal to his *ex parte* motion.

For the foregoing reasons, plaintiff's *ex parte* motion for a TRO or injunction is DENIED. Docket No. 2.

### C. Motion For Appointment Of Counsel

Plaintiff has moved for appointment of counsel to represent him in this action. A district court has the discretion under 28 U.S.C. §1915(e)(1) to designate counsel to represent an indigent civil litigant in exceptional circumstances. *See Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986). This requires an evaluation of both the likelihood of success on the merits and the ability of the plaintiff to articulate his claims *pro se* in light of the complexity of the legal issues involved. *See id.* Neither of these factors is dispositive and both must be viewed together before deciding on a request for counsel under § 1915(e)(1). Exceptional circumstances are not present. There appears to be a low likelihood of success on the merits, given the novelty of the medical issue and the mental state required for an Eighth Amendment claim. Plaintiff has been able to adequately articulate his

claim *pro se*. The motion for appointment of counsel is DENIED. Docket No. 4.

## CONCLUSION

The complaint is dismissed with leave to amend. Plaintiff must file an amended complaint that complies with the directions in this order no later than **June 29, 2020.** He must include the caption and civil case number used in this order and the words AMENDED COMPLAINT on the first page of that document. Plaintiff is cautioned that his amended complaint must be a complete statement of his claims. *See Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc) ("For claims dismissed with prejudice and without leave to amend, we will not require that they be repled in a subsequent amended complaint to preserve them for appeal. But for any claims voluntarily dismissed, we will consider those claims to be waived if not repled.") Failure to file the amended complaint by the deadline will result in the dismissal of this action.

Plaintiff's motion for a TRO or injunction is DENIED. Docket No. 2.

Plaintiff's motion for appointment of counsel to represent him is DENIED. Docket No. 4.

**IT IS SO ORDERED**.

Dated: May 19, 2020

_____
SUSAN ILLSTON
United States District Judge